IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INDEMNITY INSURANCE COMPANY** : | |
| **OF NORTH AMERICA a/s/o/** : | **CIVIL ACTION** |
| **SPRINGFIELD TOWNSHIP SCHOOL** : | |
| **DISTRICT,** : | |
|      **Plaintiff,** : | |
| : | |
|   **v.** : | |
| : | |
| **GROSS-GIVEN MANUFACTURING** : | |
| **COMPANY and RIH, INC. f/k/a ROWE** : | |
| **INTERNATIONAL, INC.** : | **No. 08-3** |
|      **Defendants.** : | |

## MEMORANDUM

**Schiller, J.**                                                                                               **September 16, 2009**

      Plaintiff Indemnity Insurance Company of North America ("ACE-INA") brings this action against Defendants Gross-Given Manufacturing Company ("Gross-Given") and RIH, Inc. ("Old Rowe") for damages sustained as a result of a vending machine that was manufactured by Old Rowe. The vending machine caught fire and caused property damage to an elementary school, which was insured by Plaintiff. Plaintiff asserts causes of action in negligence, strict liability, and breach of warranty, and claims that Gross-Given is liable as a successor in interest to Old Rowe. Presently before this Court is Defendant's motion for summary judgment as to all three causes of action. Also before this Court is Plaintiff's cross-motion for partial summary judgment on the issue of successor liability.

      For the reasons that follow, Defendant's motion will be granted in part and denied in part, and Plaintiff's motion will be granted in part and denied in part.

**I.      BACKGROUND**

According to ACE-INA, a July 26, 2007 fire at Erdenheim Elementary School was caused by a Showcase Jr. vending machine located in the teacher's lounge.[1]  The machine was manufactured by Old Rowe.

On March 28, 2003, Gross-Given and Old Rowe entered into an asset purchase agreement, whereby Gross-Given acquired substantially all of the assets of Old Rowe's vending machine business.  The Asset Purchase Agreement provided in relevant part that:

> 1.1     <u>Purchase and Sale of Vending Assets</u>. Subject to the terms and conditions of this Agreement, and except for the Excluded Assets (as defined in Section 1.2), at Closing Seller agrees to sell, and Buyer agrees to purchase, all of Seller's right, title and interests in substantially all of the assets and personal property of Seller used exclusively in Seller's Vending Business, tangible and intangible, wherever located, as they shall exist at the time of Closing ("Vending Assets"), free and clear of all Encumbrances, including, but not limited to, all of the following described assets, rights and properties:
>         (a)     <u>Inventory</u>. Except for those items of Inventory described on Schedule 1.2 (Excluded Assets), Buyer is acquiring all Inventories used exclusively in the Vending Business. At Closing, Seller will deliver to Buyer a list, certified by it to be complete and correct, of all the material items of Inventory existing and to be acquired by buyer as of the Closing Date, including the location of such items of Inventory ("Closing Inventory List").

(Def.'s Mot. for Summ. J. Ex. C [Asset Purchase Agreement] at 1-2.)  The agreement also

---

[1] This Memorandum only addresses the issue of successor liability.  The Court is not deciding the merits of the claims.  As such, although a dispute exists as to the cause of the fire, that dispute is not relevant for purposes of these motions.

granted Gross-Given the right to all equipment, customer contracts, other contracts, licenses, intellectual property assets, and goodwill related to the entire vending machine line. *Id.* Under Section 1.2 of the agreement, Gross-Given could exclude certain assets from the Asset Purchase Agreement. Neither Section 1.2, nor any other section of the agreement excludes any aspect of the Showcase Jr. Vending machine. Thus, the Showcase Jr. was part of the asset purchase, and currently belongs to Gross-Given.[2] Additionally, Gross-Given explicitly assumed the product warranties of Old Rowe. (Asset Purchase Agreement at 6.)

Gross-Given operated Old Rowe's vending machine product line in the same capacity as had Old Rowe. It also advertised that it would be taking over Old Rowe. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. and Pl.'s Mot. for Partial Summ. J. Ex. D [Edgerton Dep.] at 37.)

In September of 2003, Old Rowe entered into bankruptcy. In October, all remaining assets of Old Rowe were acquired by the Harbour Group/RWI Acquisition Corporation (hereinafter "New Rowe") free and clear of all liens, claims, and interests.

II. STANDARD OF REVIEW

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The role of the trial court is to determine whether there are material factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-

---

[2] While Gross-Given makes the bald assertion that it excluded the Showcase Jr. and related items from this agreement, they offer no proof, and fail to raise a genuine issue as to this fact. This Court is not required to credit the self-serving testimony of Defendant.

3

48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In making that determination, the court must give the nonmoving party the benefit of all reasonable inferences that might be drawn from the underlying facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995) (en banc).  A court must, however, avoid making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).  Summary judgment is appropriate if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1348.  A court must apply the same standards to a cross-motion for summary judgment.  *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 2001).

**III.   DISCUSSION**

Under Pennsylvania law, generally, "when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor." *LaFountain v. Webb Indus.*, 951 F.2d 544, 546-47 (3d Cir. 1991).  However, there are six exceptions to the general rule of successor non-liability that allow liability to flow with asset purchases.  *Lacy v. Carrier Corp.*, 939 F.Supp. 375, 378 (E.D.Pa. 1996); *Hill v. Trailmobile, Inc.*, 603 A.2d 602, 605-606 (Pa. Super. Ct. 1992).  The six exceptions are: (1) the purchaser expressly or impliedly agreed to assume the obligations; (2) the transaction amounted to a consolidation or merger; (3) the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; (5) the

4

transfer was without adequate consideration and no provisions were made for creditors of the selling corporation; or (6) the purchasing corporation continued the seller's product line. *Lacy*, 939 F.Supp. at 378 n.2.

In this case, Plaintiff argues that Gross-Given is liable to Plaintiff under the "express or implied agreement to assume obligation" exception, and the "product line" exception.

### A.    Product Warranty

Plaintiff asserts that Defendant explicitly agreed to assume liability for product warranty claims, including the claim in this case. (Pl.'s Counter-Statement of Facts in Supp. of their Opp'n to Def.'s Mot. for Summ. J. and their Cross-Mot. for Summ. J. at 18.) Gross-Givens responds that it did not assume product liability claim type warranties.

If a purchaser of assets agrees to assume obligations that are associated with those assets, then they are liable when those obligations arise. *See Lacy*, 939 F.Supp. at 378. Here, Gross-Given explicitly assumed all product warranties of Old Rowe's former line of vending machines. The Asset Purchase Agreement clearly states that, "[a]fter Closing, Buyer will assume all warranty obligations on vending products and parts manufactured by either Buyer or Seller." (Asset Purchase Agreement at 6.) Because Gross-Given explicitly accepted liability for the product warranties, its motion for summary judgment is denied as to the product warranty claim, and ACE-INA's cross-motion for partial summary judgment on the successor liability issue is granted as to the product warranty claim.

### B.    Strict Liability

Plaintiff contends that Defendant is a successor in interest under the product line

exception, and can therefore be held liable under a strict liability theory. The product line exception was initially adopted in Pennsylvania in *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106 (Pa. Super. Ct. 1981), because the successor liability doctrine left some plaintiffs without a remedy when injured by defective products. *See Kradel v. Fox River Tractor Co.*, 308 F.3d 328, 331 (3d Cir. 2002) (citing *Hill*, 603 A.2d at 606). Although the Pennsylvania Supreme Court has not addressed the product line exception, both the Third Circuit and courts in this District have applied the exception under Pennsylvania law. *See LaFountain*, 951 F.2d at 547; *see also Gower v. Savage Arms, Inc.*, 166 F.Supp.2d 240, 246 (E.D.Pa. 2001). The product line exception applies only to strict liability claims. *See Phila. Elec. Co. v. Hercules*, 762 F.2d 303, 311 (3d Cir. 1985); *Gower*, 166 F.Supp.2d at 254; *Rivera v. Mossberg*, Civ. A. No. 99-1244, 2000 WL 464058, at *3 n.1 (E.D.Pa. Apr. 20, 2000) (granting defendant summary judgment on negligence and breach of warranty claims brought under the product line exception, stating that exception only applies to strict liability).

    Under the product line exception, if one corporation acquires all or substantially all of the manufacturing assets of another corporation, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for defects in units of the same product line, even if previously manufactured by the predecessor. *LaFountain*, 951 F.2d at 547; *Dawejko*, 434 A.2d at 110.

    In deciding whether the product line exception applies, courts may consider a number of the factors, including, but not limited to: (1) whether the successor corporation advertised itself as an ongoing enterprise; (2) whether it maintained the same product, name, personnel, property, and clients; (3) whether it acquired the predecessor corporation's name and goodwill; and (4)

whether the successor corporation's acquisition caused the destruction of the plaintiff's remedy against the predecessor. *Dawejko*, 434 A.2d at 111.

Courts also consider the following three factors that the *Dawejko* court adopted: (1) the virtual destruction of the plaintiff's remedies against the original manufacturer, caused by the successor's acquisition of business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business. *Dawejko*, 434 A.2d at 109 (citing *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 579 (1977)).

Nothing suggests that all of the above factors must be met, nor is there a set formula as to how much weight need be accorded each. *Lucy*, 939 F.Supp. at 385. Rather, the product line exception was meant to be interpreted broadly: "We also believe it better not to phrase the [product line] exception too tightly. Given its philosophical origin, it should be phrased in general terms, so that in any particular case, the court may consider whether it is just to impose liability on the successor corporation." *Dawejko*, 434 A.2d at 111. A court is free to examine the surrounding circumstances on a case-by-case basis to determine if it is just to impose liability on a successor. *Id.*

Applying the factors to this case, the Court finds that the facts support successor liability as to the strict liability claim under the product line exception. Gross-Given acquired the entire vending machine product line from Old Rowe, inclusive of the Showcase Jr., together with the associated inventory, equipment, customer contracts, other contracts, licenses, intellectual

property assets, and goodwill of Old Rowe. Gross-Given continued to operate Old Rowe's former vending machine product line in the same manner as Old Rowe. It had every right to manufacture, market, advertise, service, and sell all the vending products that were originally owned by Old Rowe.

In addition, the asset sale from Old Rowe to Gross-Given brought about the "virtual destruction" of Plaintiff's remedies against Old Rowe as the original manufacturer. The sale transferred the entire vending machine product line to Gross-Given, and marked the exit of Old Rowe from the vending machine business. As a result of the asset divestment, Old Rowe entered into bankruptcy shortly after the asset purchase. The Asset Purchase Agreement was the contributing force behind the dissolution of Old Rowe. *See Conway v. White Trucks, A Division of White Motor Corp.*, 885 F.2d 90, 95 (3d Cir. 1989) (citing *Kline v. Johns-Manville*, 745 F.2d 1217, 1220 (9th Cir. 1984) for the proposition that the asset sale of the successor must *contribute to* the destruction of the plaintiff's remedies for this exception to apply). The ensuing bankruptcy was part of the same chain of events as the Asset Purchase Agreement, regardless of whether it was mandated by such agreement.

Defendant argues that Plaintiff's remedy was not "virtually destroyed" because the Asset Purchase Agreement did not force Old Rowe into bankruptcy. However, this argument goes against the spirit of the *Dawejko* decision. *Dawejko* created the product line exception to protect those who sustained damages from defective products but had been barred from recovery by successor non-liability. *See Kradel*, 308 F.3d at 331 (citing *Hill*, 603 A.2d at 606). Gross-Given's argument is unavailing because Gross-Given was aware of Old Rowe's financially distressed position and the bankruptcy filing likely to follow divestment of the vending machine

business. (Edgerton Dep. at 37.)  Further, Gross-Given was aware of the bankruptcy proceedings, yet allowed the remedies of potential plaintiff to be destroyed.  Other courts have found this destruction of remedy factor lacking if the plaintiff's remedies were extinguished by wholly separate events.  *See Dale*, 252 F.Supp.2d 186 (finding no successor liability under the product line exception because the plaintiff's remedies were extinguished by way of the original manufacturer's death).  Here, however, the events of Old Rowe divesting itself from the vending business and declaring bankruptcy in the wake of that event are intertwined.  Thus, the Asset Purchase Agreement in this case led to the virtual destruction of plaintiff's remedies.  To allow a corporation to escape liability where it extinguishes plaintiff's remedies would be to ignore the practical consequences of an asset sale such as this.

The Court also considers that Gross-Given is in a position to assume Old Rowe's risk-spreading role.  Gross-Given purchased the entire product line, and everything associated with it, thus giving it the same tools to assume risk-spreading.  In purchasing a product line, sometimes a buyer must take the good with the bad.

The Court next considers the fairness of holding Gross-Given liable as successor in interest to Old Rowe.  *Dawejko*, 434 A.2d at 109.  Here, Gross-Given continued the entire product line in the same manner as Old Rowe.  Specifically, Gross-Given purchased the goodwill of Old Rowe in the Asset Purchase Agreement, and relied on Old Rowe's reputation to boost business. (Asset Purchase Agreement at 6.)  Gross-Given held itself out as continuing the operation of Old Rowe, and it is therefore fair to allow the risk to flow with the reward.

Furthermore, Gross-Given admits that it advertised that it was taking over the vending machine business of Old Rowe, and that it intended to continue to service some machines in the

field.  (Edgerton Dep. at 37.)  None of those advertisements asserted that it would only be accepting part of Old Rowe's business, or that it would exclude certain machines, such as the Showcase Jr.  *Id.*

After considering all of the factors set forth above, this Court finds that it is just to impose successor liability on Gross-Given based on the product line exception.  As such, the Court denies Defendant's motion for summary judgment as to the strict liability issue.  The Court grants Plaintiff's motion for partial summary judgment as to successor liability on the strict liability claim.

### C. Negligence

Plaintiff provides no support for its argument that its negligence claim should fall into an exception to successor non-liability.  None of the previously outlined exceptions apply to the negligence claim, and therefore it must be dismissed as a matter of law.  Gross-Given's motion for summary judgment will be granted as to the negligence claim.  ACE-INA's motion for partial summary judgment on the successor liability issue is denied as to the negligence claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be denied as to the product warranty and strict liability claims, and will be granted as to the negligence claim.  Plaintiff's motion for partial summary judgment on successor liability will be granted as to the product warranty and strict liability claim, and will be denied as to the negligence claim.  An appropriate Order will be docketed separately.